## In re BUTLER.*

Court of Customs and Patent Appeals. Feb. 6, 1930.

Patent Appeal No. 2231.

*Rehearing denied March 19, 1930.

624

George B. Schley and Schley & Trask, all of Indianapolis, Ind. (V. A. Trask, of Indianapolis, Ind., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge. Appellant in 32 claims asked for a patent relating to an aluminum piston for automobiles and engines.

Appellant's piston is claimed to overcome the difficulty in using aluminum pistons with cast-iron or steel cylinders. The use of steel pistons in the ordinary cylinder was objectionable in so far as the piston was required to be too loose in order to avoid expansion and sticking. Aluminum pistons were found to be better, but, owing to the fact that aluminum and aluminum alloys are said to have a thermal coefficient of expansion approximately twice that of iron, the applicant sought by means of two steel rings or bars embedded in the aluminum piston and two wavy longitudinal expansion slots to control the expansion of the piston so as to conform to the expansion of the iron cylinder.

The examiner rejected claims 1 to 15, inclusive, and required division between claims 1 to 15 and claims 16 to 32. The division was required in order that separate claims might be presented upon the apparatus or article and the method of production. Applicant refused to separate, and the claims were rejected, from which action of the examiner appellant appealed to the Board of Appeals, later withdrawing his appeal as to claims 8 and 15, which were dismissed. The Board of Appeals affirmed the action of the examiner, from which decision of the Board of Appeals, appellant has appealed to this court.

While the appeal to this court does not involve all the claims, claim 1 is regarded as illustrative of the claims 1 to 15 for the piston, while claim 16 is illustrative of the claims 16 to 25 for the mold for making the piston, and claim 26 is an example of the method claims 26 to 36. Claims 1, 16, and 26 follow:

"1. A piston, comprising a head and a skirt, said skirt having a longitudinal slot extending through the wall of said skirt, said slot being wave-shaped at the exterior surface of said skirt."

"16. A mold for casting pistons, comprising a cylindrical shell having a bottom, a removable cover plate for said shell, and a sand core hung from said cover plate and joined thereto by a breech block joint."

"26. The method of making a piston, which consists in casting it in a metal mold with a sand core so that all the outer surfaces of the piston will cool in contact with the metal mold."

Claims 1 to 15 were rejected on the following references: Martin, 1,394,926, October 25, 1921; Rautenbach, 1,396,341, November 8, 1921; Pope, 1,432,897, October 24, 1922; Austin, 1,522,709, January 13, 1925—which, we think, without detailed discussion here, disclose all claimed by appellant in his claims from 1 to 15. The pertinency of the references is fully set out in the decisions of the tribunals below.

As is stated by appellant, this case involves three distinct reasons for appeal: First, whether certain of the claims claiming an invention of an apparatus were anticipated by the references (this question we have hereinbefore decided); second, whether or not this case presents an instance where the inventor, to secure the protection to which he claims he is entitled, is allowed to describe an article by reference to the process of its manufacture, it being claimed that there is no way to describe it except in that manner; third, the correctness of the ruling of the Patent Office requiring division between the claims calling for a patent on the article and the claims involving a process for making the article.

We will dispose of the third reason for appeal by stating that it is the rule and practice of the Patent Office, and so explained to appellant, to refer certain claims, such as claims drawn with reference to the mold for casting pistons, to division 3, under class 22, while claims for the methods would be referred elsewhere. The solicitor has called attention to the fact that the propriety of the division between the article and process claims is obvious, in view of the fact that it becomes a vital factor in determining infringement questions. We agree with this conclusion and find no error in requiring division.

The second ground of appeal is argued at great length and with considerable plausibility by appellant in this court. He not only insists that he should have his method patent for the method of producing the wavy slot, which slot is formed by compressible core bars in the casting of the piston, but that he should have a patent on the article or product also, although no claim can be referred to as distinguishing in any manner from a wavy slot sawed out of the piston and a wavy slot made in the molding, except in the difference that lies alone in the process of producing same. In other words, without disclosing any structural difference in the two articles, a piston with the sawed slot and a piston with the molded slot, it is contended that there is a structural difference and that that difference in the article is patentable upon a claim which refers only to the process of making same.

It is the position of the patent tribunals that as to the claim for patent for the wavy slot formed in the molding, applicant has made claim for nothing except the process of making it. That the wavy slot aside from the process of making same is old is conceded.

Appellant complains of the action of the tribunals as follows: "Those claims which describe appellant's piston by referring to the process of its manufacture were treated differently by the Primary Examiner and by the Board of Appeals. The Primary Examiner, completely ignoring facts demonstrated by appellant's tests, merely stated 'it is immaterial insofar as the finished article is concerned whether the slot is formed in the casting of the piston by a compressible core bar or afterwards.' The Board of Appeals contented itself with the statement that 'we think this feature properly forms the basis for method rather than article claims.'"

Appellant frankly admits that there is nothing in his so-called product claims which structurally distinguishes the wavy slot sawed and the wavy slot formed in the molding, but argues strenuously that there is a very great difference between them, which in the one instance results in a successful invention, and in the other a practically useless article, and argues that it is the law that where such a situation arises as that a new and useful invention has been brought about, and which is incapable of description except by reference to the process of its making, the patent law warrants the granting not only of a process patent but a patent upon the product of the process.

In appellant's brief we find the following: "Although appellant knows that a piston with the slots formed during the casting operation differs from a piston the slots of which are later cut in, and although he can demonstrate this difference by test, he is unable to state what structural differences account for the difference in expansion between pistons of these two types. He has a theory, but has been unable directly to demonstrate its truth, although the manner in which the two types of pistons act when heated supports his theory."

He next announces the theory, which we will not quote here, and then says "this theory is plausible, but it has not been directly demonstrated to be the truth."

Appellant further argues that: "Process claims are valuable, and appellant thinks he is entitled to them; but it is submitted that he should not be limited to control of the process when the article which that process produces is new and useful. The protection provided by process claims is of a different kind from that provided by article or product claims. If appellant is limited to process claims, he would be compelled, for instance, to stand idly by and see his novel and useful pistons imported into this country and sold and used on every hand without being able to exercise the exclusive right to which he, as the inventor of a new and useful article, is entitled."

He contends that his position in this particular is supported by the following decisions: Globe Nail Co. v. United States Horse Nail Co. (C. C.) 19 F. 819; Ex parte Painter, 1891 C. D. 200; Oval Wood Dish Co. v. Sandy Creek Co. (C. C.) 60 F. 285, 289; Ex parte Fesenmeier, 1922 C. D. 18; and In re Burt, 58 App. D. C. 7, 24 F.(2d) 273.

We have analyzed these decisions, and we find them to be some authority of law, in certain cases, for allowing claims for an article which is described by the process of making it; but, as we view it, the facts in the case at bar do not warrant the application of such a rule here.

In Ex parte Fesenmeier, supra, the Commissioner of Patents had under consideration the following claim: "4. The herein described hop liquid product obtained by subjecting a mixture of fresh cured hops and liquid in a hermetically sealed container to a temperature sufficient to extract all the essential oils, essences, and aromas from the hops and disseminate same through the liquid."

626

This claim on its face indicates that it is a process claim. The Commissioner there said: "The rule against allowing claims for a product defined by the steps of the process of producing it is well enough settled, and the objections to the violation of the rule are material and should not be lightly disregarded. Where it is possible to define a product by its characteristics, the practice is clearly settled that this should be done. Where, however, the product is novel and involves invention and can not be defined except by the steps of the process involved in its creation, there are cases holding that such a claim may be allowed, and it has been sustained by a Court." Citing and quoting from Ex parte Painter, supra.

A further examination of the decision discloses that the case involved the consideration of facts from which it was determinable that as a result of the process a new product resulted. The record at bar does not meet this requirement. In the Fesenmeier Case the Commissioner said: "In defining the characteristics of the product, so that it may be identified, it is not necessary that they be so defined that the general public, by a mere casual inspection, can determine the novel features of the product. It is sufficient that an expert can do this."

The record in the instant case does not disclose that an expert could determine the structural difference between the sawed wavy slot and the molded one.

The case of In re Burt, supra, in an opinion by Robb, Associate Justice, holds that a claim for a frozen confection product (ice cream), composed of a stick and granulated particles of ice cream which adhered to it at normal temperatures, was patentable. That decision holds that applicant was entitled to the allowance of a claim which would protect his product. In that case, however, the product, ice cream with a stick frozen in it, was easily distinguishable in its structural characteristics from ice cream without a stick, and the case has little, if any, bearing on the issues involved here.

Oval Wood Dish Co. v. Sandy Creek Co., supra, was an equity action involving three patents, one of which was a process patent. The process patent was declared to be invalid, since there was no invention in the process not already patented in the machine patent. The court held that there could not be two patents for the same invention. It will be noticed that the decision does not hold that a patent for a process and a patent for a product cannot issue, but that a patent

with claims for a machine and a patent with claims for a product, both of which involved but one invention could not issue. The court there said: "Two patents cannot issue for the same invention. This is rudimentary. Where two such patents issue to the same person the second patent is void. The case of Miller v. Eagle, etc., Co. [66 O. G. 845], is the latest and the most pronounced case on this subject. By that decision the following propositions are established: A second patent cannot issue to the same party for an invention actually covered by an earlier patent, although the claims of the two patents may differ, the latter patent protecting certain features of the same invention not protected by the earlier patent. When a process and a product are so identical that the former creates the latter and only so, there are not two distinct and separable inventions. The subject matter of a second patent, in such circumstances, is so inseparably involved in the first as to render the second invalid."

Applying that case to the case at bar, we conclude, first, that if the process is new, useful, and involves invention, appellant should be entitled to a patent for same; and, second, that if his process produces an article which in its structural characteristics is distinguishable from the prior art and which otherwise meets the requirements of the law, he would also be entitled to a patent on the article itself. Appellant has not complied with the order for separation, which resulted in the patent tribunals' failure to determine his right to a process patent, and the wording of the claims, when considered with the whole record, did not warrant the tribunals granting a patent on the article itself.

Globe Nail Co. v. United States Horse Nail Co., supra, is especially relied upon. This is another equity case, and, as we view it, it is a very logical decision when applied to the issues then before the court with respect to a process of making horse shoe nails. The case is easily distinguishable from the case at bar in so far as there the process itself disclosed the inherent nature of the article, which does not maintain in the instant case.

Ex parte Painter, supra, was decided in 1891 by Commissioner Simonds. The particular question involved is not very clearly set out in the opinion before us, but, from what does appear, it would seem to be rather a general statement of what the Commissioner regarded to be the law, and may be regarded as in harmony with the viewpoint of the appellant herein. The Commissioner said: "It requires no argument to establish the propo-

sition that *as a rule* a claim for an article of manufacture should not be defined by the process of producing that article. On the other hand, when a man has made an invention his right to a patent for it, or his right to a claim properly defining it, is not to be determined by the limitations of the English language. When the case arises that an article of manufacture is a new thing, a useful thing, and embodies invention, and that article cannot be properly defined and discriminated from the prior art otherwise than by reference to the process of producing it, a case is presented which constitutes a proper exception to the rule." (Italics quoted.)

It may be the law that this rule has proper application in cases where it is obvious that the inventor has created an article of manufacture which is *a new thing*, a useful thing, and embodies invention, and where such an article cannot be properly discriminated, in a claim, from the prior art otherwise than by reference to the process of producing it. The facts in the instant case do not disclose a situation where it is *obvious* that the applicant by molding a wavy slot, instead of sawing it, has produced a new, useful thing embodying invention.

The decision of the Board of Appeals is affirmed.

Affirmed.