In re RUNDELL. *

Patent Appeal No. 2821.

Court of Customs and Patent Appeals.

Feb. 8, 1932.

LENROOT, Associate Judge, dissenting.

Sydney I. Prescott, of New York City (George S. Hastings, of Brooklyn, N. Y., of counsel), for appellant.

*Rehearing denied March 7, 1932.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed his application in the United States Patent Office for a patent on certain improvements in a machine for crimping plastic caps on bottles. A large number of claims were attached to the application, many of which were allowed by the Examiner, and claims 1 to 5, 8, 10 to 24, 29, 32 to 35, 37, 39 to 48, 51, 53, 54, and 80 were rejected. The Examiner also required division between claims 55 to 64, inclusive, and 72 to 79, inclusive, and the remaining claims.

On appeal, the Board of Appeals affirmed the decision of the Examiner as to his rejection of all claims, except claim 22, which was allowed. The requirement for division was affirmed as to claims 62, 63, and 64, but reversed as to claims 55 to 61, inclusive, and 72 to 79, inclusive. The claims which were rejected were rejected upon the following references: Vause, 599,205, February 15, 1898; Schell, 708,083, September 2, 1902; Brewington, 860,787, July 23, 1907; Valerius, 888,770, May 26, 1908; Thompson, 890,250, June 9, 1908; Westlake, 1,137,820, May 4, 1915; Bradley, 1,160,369, November 16, 1915; Hood, 1,249,399, December 11, 1917; Westlake, 1,252,377, January 1, 1918; Kryzanowsky, 1,447,389, March 6, 1923.

Appellant's device is a machine for successively heating plastic caps for bottles, and applying these caps to the bottles. The novelty which he claims in his device is the fact that in the prior art, as best represented by the reference Westlake, the application of plastic caps to bottles of milk was a slow process, and it is contended that no one up until the time the appellant invented his device had ever disclosed the method of heating a plurality of such plastic caps at the same time, so that the work of capping the bottles could be more speedily accomplished; that Westlake, for example, heated his cap, applied it to the bottle, and then began the process of heating another cap. The appellant's device makes it possible to have a series of caps heating at the same time, so that no time is lost in waiting for another heated cap. It is claimed that by appellant's device he is enabled to increase the speed with which such bottles may be capped, 800 per cent. This seems to be borne out by the disclosures in the record.

The purposes of this decision will be served by quoting the language of claims 1, 21, 47, and 62:

"1. The combination with means for progressively heating a plurality of plastic caps, of means for progressively crimping a plurality of heated caps on bottles, and means whereby caps are successively presented to said heating means and said crimping means."

"21. The combination with means for progressively heating a plurality of plastic caps, of means for progressively crimping a plurality of heated caps on bottles, and means whereby caps are successively presented to said heating means and said crimping means, said crimping means including a turret, series of bottle supports and crimping devices carried by said turret, said crimping devices each having a crimping head provided with a series of crimping fingers pivoted thereto and having projecting prongs, means for normally pressing said fingers toward a common center, a ring surrounding said fingers and adapted to engage said prongs to spread said fingers apart when a cap has been crimped on a bottle, means for rotating said turret, and means for actuating said support and fingers during turret rotation."

"47. Means for progressively heating plastic caps for bottles, comprising a turret having a series of peripheral slots for supporting a plurality of caps, turret heating means, turret rotating means, and means for successively presenting caps to said slots."

"62. A crimping device for plastic bottle caps comprising a crimping head in two parts and provided with a series of radially arranged crimping fingers pivoted between the parts of said head, and an endless spring engaging all the fingers to normally press them toward a common center, and actuating means for said head."

Without going into details more than is thought necessary for the decision of the matter, it is sufficient to say that we have carefully examined the references referred to in connection with the claims in issue, and are satisfied of the correctness of the decision of the Board of Appeals as to all rejected claims, except claim 21, which will be hereinafter more specifically referred to. The basic principles of appellant's combination, as detailed in the said rejected claims, are all found in the references. As it appears to us, all that the appellant has done is to combine elements which were already known to the

art. By the combination of these elements, he has produced a machine which is a commercial success. However, each element, including the turret heater with peripheral slots, the progressive heating of caps, the progressive capping of bottles, the process of conducting the bottles to the capper and away therefrom, and the transfer of the heated caps from the heater to the capping machine, are all found in the references, and, where they are thus found, they perform exactly the same functions that they perform in appellant's device. Therefore, according to the clear weight of authority, having assembled elements already known, which do nothing more than perform their formerly known functions, no invention lies in the combination. In re Bayer, 35 F.(2d) 66, 17 C. C. P. A. 614; In re Appelburg, 37 F.(2d) 620, 17 C. C. P. A. 820; In re Isherwood, 40 F.(2d) 987, 17 C. C. P. A. 1187; In re Whitaker, 47 F.(2d) 386, 18 C. C. P. A. 1011; In re Armbruster, 47 F.(2d) 815, 18 C. C. P. A. 1039.

[3] As to claim 21, however, we are unable to find, in the references cited by the Board of Appeals, a complete anticipation. This claim, as will be seen, includes the element, "a ring surrounding said fingers and adapted to engage said prongs to spread said fingers apart when a cap has been crimped on a bottle." This claim was rejected by the Board by reference to Brewington, Hood, and Kryzanowsky, in view of Westlake. We are unable to find, in the references cited, the ring and prong elements referred to in the claim. As these seem to be essential parts of the mechanism, no reason appears why appellant should not have this claim allowed.

Referring now to the requirement to divide claims 62, 63, and 64, this is justified by the solicitor for the Patent Office upon the theory that rules 41 and 42 of said office, having the force and effect of law, permit a discretion in the office as to such divisions. In this connection In re Butler, 37 F.(2d) 623, 17 C. C. P. A. 810, and In re Wellman, 48 F. (2d) 926, 18 C. C. P. A. 1214, are cited.

Claims 62, 63, and 64 are framed upon one element only of the appellant's device; namely, the crimping head. This crimping head, however, constitutes an essential element of his combination, or bottle capping machine. It is minutely described in the specification and is figured in the drawings. It is described in claim 22, allowed by the Board, and, in claim 21, herein allowed. While the language used in said claims 21 and 22 is not exactly that which appears in said claims 62, 63, and 64, there is sufficient

to show that this crimping head referred to in said claims 62, 63, and 64, is an essential element of a part, at least, of appellant's combination claims. Whether these claims state a patentable subject-matter is not now the object of our inquiry. Assuming that they do if included in a separate application, was a division properly required?

The argument is quite appealing to the court that in all such cases, if the various classes of inventions described in claims filed in the Patent Office, necessarily, in the organization of that office, must pass through departments especially set up and equipped with specialists in the lines of said investigations, the work of the Patent Office and of this court would be greatly facilitated by giving to the office complete discretion in matters of division. However, in view of the authorities, we are not justified in holding this to be the law.

In Gill v. Wells, 22 Wall. 1, 24, 22 L. Ed. 699, the Supreme Court said:

"Cases arise where a patentee, having invented a new and useful combination consisting of several ingredients which in combination compose an organized machine, also claims to have invented new and useful combinations of fewer numbers of the ingredients, and in such cases the law is well settled that if the several combinations are new and useful, and will severally produce new and useful results, the inventor is entitled to a patent for the several combinations, provided that he complies with the requirement of the Patent Act and files in the Patent Office a written description of each of the alleged new and useful combinations, and of the manner of making, constructing, and using the same.

"He may give the description of the several combinations in one specification, and in that event he can secure the full benefit of the exclusive right to each of the several inventions by separate claims referring back to the description in the specification; and if by inadvertence, accident, or mistake, he should fail to claim any one of the described combinations, he may surrender the original patent and have a reissue not only for the combination or combinations claimed in the original, but for any which were so omitted in the claims of the original patent."

In Steinmetz v. Allen, 192 U. S. 543, 24 S. Ct. 416, 48 L. Ed. 555, the validity of old rule 41 of the Patent Office, prohibiting the inclusion of two separate patentable matters in one application, was before the court. The rule was held invalid, and, while the court held that the right to require a division in the

Patent Office was discretionary, it was held that an applicant might describe two inventions, in which there was unity, in one application. This case was commented upon by us in In re Wellman, supra.

In Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 29 S. Ct. 495, 500, 53 L. Ed. 805, an infringement suit, the court said:

"* * * Besides, a patent may embrace more than one invention. Steinmetz v. Allen, 192 U. S. 543, 24 S. Ct. 416, 48 L. Ed. 555. A process and an apparatus by which it is performed are distinct things. They may be found in one patent; they may be made the subject of different patents. So may other dependent and related inventions. If patented separately, a foreign patent for either would not affect the other. Why would such effect follow if they are embraced in the same patent? What policy of the law would be subserved by it? The purpose of section 4887 of the Revised Statutes is very clear. It is that whenever an invention is made free to the public of a foreign country, it shall be free in this. The statute has no other purpose. It is not intended to confound rights, and to make one invention free because another is made so. This will even more distinctly appear in case of a patent for a combination, such as claim 35 is of the patent in suit.

"A combination is a union of elements, which may be partly old and partly new, or wholly old or wholly new. But, whether new or old, the combination is a means—an invention—distinct from them. They, if new, may be inventions and the proper subjects of patents, or they may be covered by claims in the same patent with the combination."

The Circuit Court of Appeals for the Eighth Circuit, in discussing this matter in Century Electric Co. v. Westinghouse Elec. & Mfg. Co., 191 F. 350, 353, said: "But one who makes several patentable inventions that result in a new and useful machine or process, or both, may have as many separate valid patents as he makes patentable inventions. His is the option to secure all these inventions by a single patent, or by many patents, and the fact that he describes all of them in his application or specification for an earlier patent to secure one or more of them, does not invalidate a subsequent patent to him for those inventions there described but not claimed. Robinson on Patents, § 465; Expanded Metal Co. v. Bradford, 214 U. S. 366, 383, 385, 29 S. Ct. 652, 53 L. Ed. 1034; Badische Anilin & Soda Fabrik v. A. Klip-

stein & Co. (C. C.) 125 F. 543, 544; Westinghouse Elec. Co. v. Dayton Fan & Motor Co. (C. C.) 106 F. 724, 726; Westinghouse Elec. & Mfg. Co. v. Electric Appliance Co. (C. C.) 142 F. 545, 551."

It quite plainly appears here that the element described in claims 62, 63, and 64, namely, the crimping device, is but one element of his combination bottle capping machine, and that the appellant is here insisting upon his right to have the inventive character of this element passed upon on this application. No reason is apparent, so long as the inventions are correlated and in unity, why he may not do so. Whether the claims are patentable to the appellant is another matter, and one which, in this case, we feel should be first determined on its merits by the Patent Office. The mere fact, however, that claims 62, 63, and 64 describe separate inventions from the other claims does not, in our opinion, justify an involuntary division of them.

It would seem, in view of the references cited below and of our observations herein, that said claims 62 and 63 might well be rejected, and said claim 64 be held to be allowable. However, inasmuch as these claims were not rejected as to this application on these grounds, but by an order requiring a division, we think it the better practice that these claims be referred back to the Patent Office for decision as to their patentability, consistent with the views expressed herein.

The decision of the Board of Appeals is affirmed as to claims 1 to 5, inclusive, 8, 10 to 24, inclusive (except claim 21), 29, 32, 33, 34, 35, 37, 39 to 48, inclusive, 51, 53, 54, and 80, and reversed as to claim 21. The decision of the Board of Appeals in requiring division of claims 62, 63, and 64 is reversed, and the matter is remanded to the United States Patent Office for further proceedings in conformity herewith.

Modified.

LENROOT, Associate Judge (dissenting).

I am compelled to dissent from that part of the decision of the majority which treats the issue of division as to claims 62, 63, and 64 as an interlocutory order subject to review by this court, and while I agree with the majority that there was error in requiring a division, I cannot do so upon the grounds stated in the opinion for such conclusion.

I agree that combination claims and a claim for a specific element may be included in one application, and that division is not proper where such specific element is an essen-

tial element in the combination claims; but I cannot agree that claims 62 and 63 are stated to be, or are in fact, essential elements of claims 21 and 22, as held by the majority. In neither of said claims are the elements described in claims 62 and 63 stated generally or specifically, and it is clear that crimping heads responding to the requirements of combination claims 21 and 22 could be used which do not embody the structure claimed in claims 62 and 63. Therefore the elements of said last-named claims are not essential elements of said claims 21 and 22, and, if nothing more were involved, there would be no abuse of discretion by the tribunals of the Patent Office in requiring a division. However, claim 21, allowed by the majority, does specifically include an element comprising the essential element of claim 64; in fact, the latter part of claim 21 is almost literally the same as claim 64.

As to claims 62 and 63, the elements therein described are stated in almost identical language in claim 18, which claim the majority finds unpatentable.

For these reasons, I agree that there was error by the Board of Appeals affirming the requirement for division as to claims 62, 63, and 64.

The majority opinion, however, seems to treat the requirement for division as an interlocutory order, for it is stated in the opinion, with reference to claims 62, 63, and 64, that "Whether these claims state a patentable subject matter is not now the object of our inquiry", and again, "Whether the claims are patentable to the appellant, is another matter, and one which, in this case, we feel should be first determined on its merits, by the Patent Office."

If the order requiring division is an interlocutory order, the rule is well established that we have no jurisdiction to entertain an appeal from it. This rule is so well established that it needs no citation of authority to support it. If the object of our inquiry is not to ascertain whether these claims "state a patentable subject matter," it must be because the majority regards the order requiring division as interlocutory.

Whether an order requiring division of an application is an interlocutory order was considered by the Court of Appeals of the District of Columbia in the case of In re Frasch, 20 App. D. C. 298, where it was held that it was such an order, from which an appeal would not lie to that court. However, in the case of Steinmetz v. Allen, 192 U. S.

543, 24 S. Ct. 416, 48 L. Ed. 555, it was held that a requirement for division of an application constituted a final rejection by the Primary Examiner of the claims there involved, from which an appeal to the Board of Examiners in Chief could be taken. It is proper to observe that in this case the Supreme Court referred to the case of In re Frasch, supra, but did not disapprove it.

Assuming that we may, for the purpose of establishing our jurisdiction to entertain this appeal, regard the decision of the Board of Appeals and that of the Primary Examiner as a final rejection of claims 62, 63, and 64, then it must follow that the claims are before us for action upon their merits, and, if the record before us is sufficient for that purpose, it is our duty to pass upon the merits. I think the record is sufficient for that purpose, and that, in fact, the majority opinion does in effect pass upon the patentability of the subject-matter of claims 62, 63, and 64. Therefore, if this is not an interlocutory order, there is no reason for remanding the case to the Patent Office for further consideration, as the majority decision requires.

Furthermore, appellant in his brief contends that said claims are patentable, and states his reasons therefor.

It will be observed that, in allowing claim 21, the majority does so wholly upon the ground that the feature of the ring element is not found in any of the references, and the opinion states: "As these seem to be essential parts of the mechanism, no reason appears why appellant should not have this claim allowed." Therefore, as this element constitutes the essential part of claim 64, and as it or its equivalent is not found in any reference, and this element makes the combination claim 21 patentable, by the same course of reasoning claim 64 is patentable and should be allowed. While I have some misgiving as to the correctness of the conclusion of the majority as to claim 21, I do feel clear that, upon the reasoning of the majority as to the patentability of claim 21, claim 64 should likewise be allowed.

With regard to claims 62 and 63, the structural elements of these claims are specifically described in claim 18, disallowed by the majority. With respect to said claim 18, which is considered in the majority opinion together with certain other claims, the majority state: "As it appears to us, all that appellant has done is to combine elements *which were already known to the art,*" and again, "having assembled elements *already*

*known,* which do nothing more than perform their formerly known functions, no invention lies in the combination." (Italics mine.)

If the majority finds all the structural elements described in claim 18 in the references, it must also find the structural elements described in claims 62 and 63 in the references, and therefore said claims are not patentable.

I see no escape from this conclusion. If the structural elements described in claims 62 and 63 are not found in the references, then of course they cannot be found when the same elements are considered in said claim 18.

I therefore come to the conclusion that claims 62 and 63 should be disallowed; if I be wrong in this conclusion, then clearly the majority is in error in disallowing claim 18.

I do not question the power of the court to remand a case to the Patent Office for consideration, where the record before us is insufficient for us to make a final determination of the questions within our jurisdiction arising upon the appeal; and in the case at bar, if the record before us was not sufficient to determine the patentability of claims 62, 63, and 64, I should have no objection to the case being remanded for a further consideration of that question by the tribunals of the Patent Office.

My objection to the remand is that a majority of the court has necessarily passed upon the patentability of these claims in affirming the rejection of claim 18 and reversing the Board of Appeals as to claim 21. As heretofore pointed out, if the decision of the majority is right as to claim 18, it is necessarily so because claims 62 and 63 are not patentable. In order for the majority to arrive at the conclusion that it did, it necessarily found that the elements of claims 62 and 63 were found in the references; otherwise, the claim should have been allowed. As to claim 21, the majority finds this claim allowable solely because of elements found in claim 64, and, if claim 21 is allowable for that reason, it necessarily follows that claim 64 is also allowable.

While it may be said that the Patent Office should have opportunity to cite further references as anticipating claim 64, the presumption is that, in passing upon claim 21, it did cite all of the references which were applicable thereto, and, not having cited any that, in the opinion of the majority, included the elements of claim 64, the inference is that there are none such. Furthermore, I would observe that if upon the remand additional references should be cited establishing the anticipation of claim 64, the same references would render unpatentable claim 21, which the majority allows, because claim 21 is allowed by the majority solely upon the ground that the element claimed in claim 64 is not found in the references cited. With respect to claims 62 and 63 there could, of course, be no occasion for citing further references, because the majority agrees with the Patent Office tribunals that the references cited contain all of the elements found in said claims 62 and 63. Under the majority opinion, if this case is remanded, the Patent Office must reject claims 62 and 63 because this court has found, in rejecting claim 18, that all of the elements included in said claims 62 and 63 are old in the prior art, and, unless it can find some new references with respect to claim 64, the Patent Office must allow this claim because this court has found, in allowing claim 21, that the elements of this claim are patentable.