25 C.C.P.A.(Patents)

In re McKEE.

Patent Appeals No. 3938.

Court of Customs and Patent Appeals.

March 28, 1938.

Roy W. Johns, of Chicago, Ill., for appellant.

R. F. Whitehead, of Washington, D. C., (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner rejecting claims 2, 3, 4, 5, and 6 of appellant's application for a patent upon grounds hereinafter stated.

The Examiner allowed one claim, numbered 7, and the Board of Appeals reversed his rejection of claim No. 1.

Claims 2, 4, and 5 are illustrative and read as follows:

"2. The method of cooking meat which comprises subjecting the meat to the action of heat and steam for a period of time substantially longer than is usual for the cooking of meat while said meat is held in a container under pressure, the cover of said container being disposed below the top of the sides of the container whereby natural juices of the meat rise above the cover through an aperture during the cooking process.

"4. As a new article of manufacture, a product prepared in accordance with the method of Claim 1.

"5. As a new article of manufacture, a product prepared in accordance with the method of Claim 2."

Inasmuch as claim 4 is related to allowed claim 1, we quote said last-named claim, as follows:

"1. The method of cooking meat which comprises placing the meat in a container under pressure, the cover of said container being positioned below the top of the sides thereof and provided with a space between the cover and sides whereby juices may rise above said cover, subjecting the meat while in said container to the action of heat, smoke and steam whereby natural juices of the meat cook out and·come up above the cover, absorb smoke flavor to be carried down into the meat during the smoking and cooking process, cooking until the meat is thoroughly cooked and thereafter chilling and permitting re-absorption of juice by the meat."

But one reference is cited to show the state of the art, viz., the patent to Rutherford, No. 1,837,924, December 22, 1931.

In its decision the Board of Appeals states:

"The invention relates to a method of cooking meat and the product obtained. The meat is placed in a container and compressed by a cover which fits down inside the container. This cover permits the juices of the meat to pass up over the cover within the container during cooking. The container is then placed in a smoke house. The temperature is raised to 190° to 195° F. The humidity is raised to the saturation point by introducing steam into the smoke house. Smoke is applied simultaneously. The temperature, humidity and smoke conditions are maintained until the inside temperature of the meat reaches 125° F. which requires about 3 to 6 hours. The temperature is then reduced to 160°— 165° F. and the humidity is correspondingly lowered but is maintained at saturation point. These conditions are maintained for about 16 hours. During the stages of cooking the juices of the meat circulate over the cover and absorb smoke. As the juices pass down into contact with the meat the·smoke is absorbed by the meat. After the cooking the container with the meat in it is chilled so that the meat will re-absorb some of the juices."

Claims 2 and 3 were rejected upon the ground that they do not include all of the essential steps of the method set forth in appellant's specification, whereby an improved product is obtained. The Board approved this holding of the Examiner, stating:

" * * * These claims define substantially nothing more than cooking meat for an extended time in a ham boiler and letting it cool in the boiler. * * *"

It may be observed that neither of these claims includes the step of subjecting the meat to smoke.

We find nothing in appellant's application disclosing that the presence of smoke is not an essential element of appellant's process, but, on the contrary, smoke is repeatedly referred to in his specification as one of the elements of his process. After fully describing the process employed, the specification states:

"I have found that any of these products when processed at these high temperatures in the presence of smoke and saturated air for the long period of time in which I keep them in the combined cooking and smoking process, develop a very unusual and desirable flavor entirely differ-

ent from any flavor which has been previously produced by other methods of cooking these products."

It is clear to us that, if claims 2 and 3 embrace invention, that invention is not disclosed in appellant's application, for there is nothing therein to indicate that the steps named in claims 2 and 3, if carried out, would result in an improved product. Furthermore, we are in agreement with the Board that claims 2 and 3 define substantially nothing more than cooking meat for an extended time in a conventional ham boiler, and in claim 3 the additional step of letting it cool in the boiler. We are in agreement with the Examiner, who held that prolonged cooking expressed in general terms, and subsequent natural cooling by the withdrawal of heat, lies in the domain of the experienced cook rather than in that of the inventor.

We think that our observations, made in the case of In re White, 39 F.2d 974, 975, 17 C.C.P.A. Patents, 956, are here applicable; we there said:

"Appellant's product is evidently the result of using a particular formula or recipe whereby well-known ingredients are mixed or blended. His plan differs from other formulas or recipes, but we think this cannot be held to be patentable invention. It is a matter of common knowledge that new recipes for cooking and for the production of food products are constantly being developed by adding or eliminating well-known ingredients or treating them in ways differing from former practice. To hold all these patentable would unsettle the arts of cooking and of preparing food products. It surely was not contemplated that they should come within the purview of the patent laws, unless more appears than we can find in the instant case."

We find no error in the rejection of claims 2 and 3, and it follows that claims 5 and 6, which cover products defined by the processes as set out in said claims 2 and 3, respectively, are likewise unpatentable.

With regard to claim 4, a different question is presented. This claim defines a product prepared in accordance with the method of claim 1. The Board of Appeals reversed the Examiner with respect to the rejection of claim 1, and affirmed the Examiner's rejection of claim 4. The Board stated:

" * * * The product should be defined by its characteristic instead of by the method used in its production. We believe that it could be so defined. It is not to be inferred from this that such claims are patentable. * * *"

The Examiner rejected claim 4 under the rule that, with certain exceptions, a product may not be defined in a claim by the process of making it, and that appellant's product does not come within the exceptions, citing In re Butler, 37 F.2d 623, 17 C.C.P.A., Patents, 810. He further rejected the claim as being unpatentable upon the ground that appellant's product differs from the usual product, or the product shown by Rutherford, only in degree.

We will first consider the objection to claim 4 upon the ground that the product should be defined by its characteristics, and not by the method of producing it. In other words, the objection is made that appellant's product does not come within the exception to the general rule that a product claim is not allowable if the product is described by the method of producing it.

If it cannot be otherwise defined, and it is new and inventive, a product may be claimed by the process of producing it. In re Grupe, 48 F.2d 936, 18 C.C.P.A., Patents, 1262.

We are not in accord with the view of the Board that the product produced by the process set out in claim 1 can be defined by its characteristics. The Board expressed the belief that it could be so defined, but made no suggestion of how it could be done, and we can think of no definition that would define the product other than by the process of making it. Appellant's application states that the products resulting from his processes have a very unusual and desirable flavor different from the flavor of meats prepared by other processes, but it seems to us that any attempt to describe appellant's product by its flavor, and to base a claim thereon, would properly find objection as being too vague and indefinite to distinguish it from other meat products well-known in the prior art.

It is our opinion that claim 4 is not subject to the objection that the product is not described other than by the process of producing it, for we do not think there is any other way of describing it.

The other ground of objection by the Examiner, impliedly approved by the Board of Appeals, presents a more difficult ques-

tion. The Examiner held that the difference between appellant's product, produced according to the process set out in claim 1, and products known to the prior art, was only a difference in degree and not in kind. The only information we have upon that subject is the recital, in appellant's specification, that the product has a flavor that is "entirely different from any flavor which has been previously produced. * *" In view of the fact that, if claim 4 is allowed, it will afford appellant protection only for products produced according to the process set out in allowed claim 1, we think that the patentability of claim 4 is at least sufficiently doubtful to bring it within the rule that the doubt should be resolved in favor of appellant. In view of the foregoing, it is our opinion that claim 4 should be allowed.

For the reasons herein stated, the decision of the Board of Appeals is affirmed as to claims 2, 3, 5, and 6, and reversed as to claim 4.

Modified.