28 C.C.P.A. (Patents)

### In re MOELLER.

Patent Appeal No. 4422.

Court of Customs and Patent Appeals.

Feb. 24, 1941.

George W. Mills, Jr., of Lockland, Ohio (Albert F. Robinson, of Lockland, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Comm'r of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Justices.

BLAND, Associate Judge.

Appellant filed an application in the United States Patent Office relating to improvements in molded cement products and the method of and apparatus for manufacturing the same, which improvements particularly pertain to asbestos cement compositions.

The Primary Examiner, after allowing 17 claims, finally rejected claims 1, 7, 15 to 19, 21, 26 and 27. Upon appeal, the Board of Appeals affirmed the examiner as to the rejection of claims 17, 18, 26 and 27, but reversed the examiner as to claims 1, 7, 15, 16, 19 and 21. Thus, appellant's present application contains 23 allowed claims which relate either to the method of or apparatus for fabricating the molded cement product.

Appellant has here appealed from the decision of the board, affirming that of the examiner in rejecting said claims 17, 18, 26 and 27, which claims are directed to the article and read as follows:

"17. A hydraulic cement sheet characterized by having been molded in a mold provided with an absorbent resilient sheet contiguous to the sheet during molding which permitted sufficient flow of the concrete to be substantially uniform in thickness and density.

"18. A hydraulic cement sheet provided with corrugations characterized by having

been molded in a mold provided with an absorbent resilient sheet contiguous to the sheet during molding which permitted sufficient flow of the concrete to be substantially uniform in thickness and density."

"26. As an article of manufacture, a product prepared in accordance with the method of claim 2.

"27. As an article of manufacture, a product prepared in accordance with the method of claim 3."

Claims 2 and 3, upon which claims 26 and 27 are based, read:

"2. A method of fabricating hydraulic cement sheets comprising molding a sheet of hydraulic cement with an absorbent resilient sheet and a woven fabric interposed between the cement and the mold, said absorbent resilient sheet being between the woven fabric and the mold.

"3. A method of fabricating hydraulic cement sheets comprising molding a sheet of hydraulic cement with a felt fabric and a woven fabric interposed between the cement and the mold, said woven fabric being in contact with the cement."

The invention is described in appellant's brief as follows: "The invention * * * relates particularly to molded products of hydraulic cement compositions, such as Portland cement and asbestos, which are first mixed in a homogeneous mass and then subjected to pressure and drying for being molded into sheets, blocks or the like. The sheets are ordinarily provided with corrugations in order to stiffen and rigidify them. Heretofore it has been the practice to place on opposite sides of the sheet to be pressed layers of woven fabric which are relatively thin and flexible. The fabric being relatively thin and flexible easily wrinkles and is not of sufficient thickness to be resilient for permitting flow of the material in the product being molded. The aim of the invention is to use an absorbent resilient sheet so that the pressure applied in the molding operation is equalized at all points of the material being molded, thereby causing all portions of the product to be uniform in thickness and density, and to be homogeneous in character."

It will be noticed that claim 17 calls for an *absorbent resilient sheet,* claim 18 calls for a *sheet with corrugations,* while claim 26 which is based upon claim 2 calls for an *absorbent resilient sheet and a woven fabric interposed,* etc., and claim 27, as based upon claim 3, calls for *a felt fabric and a woven fabric interposed,* etc.

The references relied upon by the Patent Office tribunals in rejecting the claims at bar are:

Williams, 1,433,864, October 31, 1922.

Ledeboer, 1,944,895, January 30, 1934.

The examiner in rejecting the claims said:

"Claims 17, 18, 26, and 27 are directed to a product which is structurally the same as disclosed by Williams or Ledeboer of record. These claims differ then from the prior art only by including process features. Therefore, claims 17, 18, 26 and 27 have been rejected as improper article claims since they define the article by the process of making it instead of by its physical and chemical characteristics. Applicant has contended that it cannot be defined by its physical and chemical characteristics. The Examiner does not agree with this contention.

"The article is a molded asbestos-cement sheet or block.

" * * * Obviously it could be claimed by such characteristics as its ingredients, specific gravity, and also the physical shape of the final article. Accordingly these claims are not thought to come under the exception to the rule that product claims should not be claimed by the process of making it." * * *

The board, in affirming the action of the examiner in rejecting the appealed claims, said: "The rejection of claims 17, 18, 26 and 27 to the article is believed warranted inasmuch as these claims distinguish from Williams and Ledeboer primarily in method steps. We notice that Williams states he gets as a product 'a corrugated sheet of fiber concrete material, possessing the requisite identity in curvature at the two sides, non-laminated, homogeneous in density, and of uniform internal structure throughout.' We do not understand that appellant obtains a sheet having different characteristics especially as the patentee describes a ready flow of the material in all directions. We believe, therefore, that the claims to the article are properly rejected for reasons given here and more fully by the examiner."

■ Appellant states that the claims at bar are in proper form and that the product defined therein differs from prior art products in uniformity of thickness and

density, and that the claims are not subject to the general rule that it is not proper to claim an article by reciting the process of its production, but that the exception to said rule applies, i. e., where one has invented a new and useful article which cannot be described in any other manner than by the process of making it, he may depart from said general rule. The foregoing exception to the rule was stated in In re Brown, 58 App.D.C. 285, 29 F.2d 873; In re Butler, 37 F.2d 623, 17 C.C.P.A., Patents, 810; In re Grupe, 48 F.2d 936, 18 C.C.P.A., Patents, 1262; In re Merz, 97 F.2d 599, 25 C.C.P.A., Patents, 1314; In re McKee, 95 F.2d 264, 25 C.C.P.A., Patents, 1000; and In re Brawn, 77 F.2d 362, 22 C.C.P.A., Patents, 1239.

In Re McKee, supra [95 F.2d 266], we said:

"If it cannot be otherwise defined, and it is new and inventive, a product may be claimed by the process of producing it. In re Grupe, 48 F.2d 936, 18 C.C.P.A., Patents, 1262.

\*　　\*　　\*　　\*　　\*

"It is our opinion that claim 4 is not subject to the objection that the product is not described other' than by the process of producing it, for we do not think there is any other way of describing it."

As is pointed out by the Patent Office tribunals, Williams states that his product is a "corrugated sheet of fiber concrete material, possessing the requisite identity in curvature at the two sides, non-laminated, homogeneous in density, and of uniform internal structure throughout." This describes the structure which appellant says he has produced.

We agree with the tribunals below that if there is any novel feature about the article itself, it is not seen why it cannot be expressed in terms of structure, such as quality, texture, specific gravity or other characteristics.

If appellant has here attempted to distinguish the characteristics of his article over those of the cited prior art article in Ledeboer, it rests in the difference in uniform thickness and density. Obviously, these structural characteristics could be defined without resorting to the method of making the article and it is not argued that if they were so defined the claim would be inventive over the prior art cited.

To be an exception to the said rule hereinbefore quoted, so as to enable one to claim an article by describing the method of its manufacture, the article itself must be inventive and patentably distinct from such articles disclosed in the prior art. In re Ewert, 77 F.2d 498, 22 C.C.P.A., Patents, 1262. Appellant has failed to convincingly show us that he has had a concept of a new article which has characteristics which distinguish it from prior art articles. The foundation for the exception to the said general rule is that the article itself must constitute an invention.

■ Appellant seems to argue, and cites certain cases which he asserts support said contention, that process steps recited in an article claim are not necessarily fatal to the validity of the claim. This, of course, is true, and the courts have held to that effect many times. Obviously, an element of an article claim relating to the process of making the article will not invalidate the claim if the remainder of the claim, eliminating the process reference, supports patentability. The District Court in Bituminous Products Co. et al. v. Headley Good Roads Co., D.C., 2 F.2d 83, 87, which was affirmed by the Circuit Court of Appeals for the Third Circuit, 14 F.2d 667, in addressing itself to a similar question, said: "The embodiment of such a statement would, of course, neither create validity if it were lacking nor destroy it if it were otherwise present. It would only emphasize an alleged useful and novel result obtained by the employment of the methods specified in the claim. \* \* \*"

The same principle is announced in In re Grupe, supra.

The examiner, in an office ruling, stated that this court's decision in In re McKee, supra, had been overruled by the Supreme Court's decision in General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 58 S.Ct. 899, 903, 82 L.Ed. 1402. In his statement subsequent to appeal to the board, he did not state that the last decision overruled the said McKee case, but quoted the following from the General Electric Co. case: "\* \* \* It may be doubted whether one who discovers or invents a product he knows to be new will ever find it impossible to describe some aspect of its novelty."

As we understand the said General Electric Company case, the situation there was somewhat different from the situation at bar or that which prevailed in the said McKee case. In the General Electric Company case, the claim containing functional statements purported to assert a monopoly in the filament no matter how it was made. As has been pointed out by appellant here,

he does not by the involved claims seek to establish a monopoly on the article itself if made ·by processes other than that set out in the claim. The gist of the General Electric Company opinion, we think, is found in the following language:

" *  *  * Although in some instances a claim may validly describe a new product with some reference to the method of production, a patentee who does not distinguish his product from what is old except by reference, express or constructive, to the process by which he produced it, cannot secure a monopoly on the product *by whatever means produced.*  *  *  * (Italics ours.)"

As we see it, the last-quoted language in no sense questions the correctness of our holding in the McKee case, supra, or the rule and its exception stated therein, because it was not contended there, as it is not contended here, that the controverted claim permitted a monopoly on the article "by whatever means produced." In the McKee

case and here the suggested monopoly was. claimed only for an article produced by the respective methods recited in the claims.

We think the rule is well established that where one has produced an article in which invention rests over prior art articles, and where it is not possible to define the characteristics which make it inventive except by referring to the process by which the article is made, he is permitted to so claim his article, but is limited in his protection to articles produced by his method referred to in the claims.

■ It follows that the Board of Appeals. correctly affirmed the decision of the examiner in holding that the article itself is not. shown to be inventive over the articles referred to in the prior art, and that the recitation in said claims of the method of production does not lend patentability to the claims. The decision of the Board of Appeals is affirmed.

Affirmed.