34 C.C.P.A. (Patents)

## Application of WELBLUND et al.

### Patent Appeal No. 5242.

Court of Customs and Patent Appeals.
June 17, 1947.

Anthony William Deller, of New York City (Lee L. Townshend, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 41, 43, 45, 46, 47, and 48) in appellants' application for a patent for an alleged invention relating to improvements in metal ingots.

Claims 41 and 48 are sufficiently representative of the appealed claims. They read:

"41. As a new article of manufacture, a continuously cast unscalped ingot, casting or shape of metal or alloy consisting largely of transverse crystals that are substantially perpendicular to the longitudinal axis of said article and having substantially constant density in a longitudinal direction combined with a practically perfect smooth surface free from cracks, fissures, cold sets or shuts and like surface defects, whereby acceptable rolled and drawn products can be produced therefrom without surface scalping."

"48. An unscalped continuously cast tough pitch copper ingot, casting or shape having a thin skin of copper crystals in a matrix of copper-copper oxide eutectic covering the exterior thereof and consisting mainly of elongated crystal aggregates extending inwardly substantially perpendicularly to said skin and substantially to the cooling center of the ingot, casting or shape having a substantially constant density in a longitudinal direction which does not vary more than about 0.07 in density combined with longitudinal uniformity of structure and composition, good working properties, a high capacity for edge bending and resistance to edge cracking, and a high capacity for twisting and bending, and having, as cast, a practically perfect smooth surface free from cracks, fissures, cold sets or shuts and like surface defects whereby acceptable rolled and drawn products can be produced therefrom without surface scalping."

The reference relied upon is:

"Ingots and Ingot Moulds" by R. W. and H. B. Brearley, pages 207 to 210.

Appellants' application relates to continuously cast metal ingots and is a division of two prior applications which matured into patents Nos. 2,284,703 and 2,284,704, June 2, 1942. Those patents disclose and claim, respectively, a method and an apparatus for casting metal by pouring it into an elongated mold and allowing it to cool and harden while moving through the mold. In order to prevent sticking of the metal, the mold is longitudinally divided into sections and the sections are continuously vibrated to produce a slight variation in the cross section of the mold.

Appellants allege in their application that the ingots produced in the manner stated are exceptionally smooth and free from cracks or surface defects, so that it is unnecessary to "scalp" them; i. e., to smooth the surface by machining or milling. It is also stated that appellants' ingot has many desirable properties such as uniformity of structure and composition throughout its length, and that it consists largely of crystals which are substantially perpendicular to its longitudinal axis.

The Brearley reference relates to the crystal structure of ingots and discloses that ingots may have chill crystals, which are shown as being substantially perpendicular to the longitudinal axis of the ingot. It is stated in the reference that the crystals may extend to the center of small ingots.

Each of the appealed claims includes two process limitations; namely, that the article is continuously cast and that it is unscalped. Scalping means the removing of the outer portion of a casting to produce a smoother surface. Those process limitations are strongly relied on by counsel for appellants.

The general rule is that an article cannot be distinguished from the prior art in terms of the process by which it was made unless the article is new and inventive and cannot properly be defined in any other way. In re Moeller, 117 F.2d 565, 28 C.C. P.A. (Patents) 932, and authorities therein cited. Assuming, however, that the in-

stant case is a proper one for the use of process limitations in defining appellants' article, the terms "continuously cast" and "unscalped" are not patentable limitations.

It is conceded in the brief of counsel for appellants that continuously cast articles are not new, and the record discloses continuous casting processes and apparatus in the patents of record to Betterton et al., No. 2,195,809, and Junghans, No. 2,135,184. The record contains an affidavit in which it is stated that the crystal structure of articles cast by appellants' process differs from the crystal structure of other continuously cast articles. It is evident that continuously cast articles would differ widely from each other, depending upon such condition as kind of metal used, speed of casting, size, and rate of cooling. The statement that an article was continuously cast, therefore, is not a statement that it is made by a new process and does not limit the structure of the article in any definite manner.

Similarly, unscalped articles are not new. On the contrary, every casting is unscalped as originally produced. Furthermore, "unscalped" is not only a process limitation but also a negative limitation, and does not call for any definite property of the article. In this connection, it is sufficient to say that the appealed claims are not limited to ingots made by the specific process of appellants' prior patent.

It is contended by counsel for appellants that the unscalped ingots made by the process of appellants' prior patent, No. 2,-284,703, will not slip in the rolls of mills, whereas ingots which have been scalped in certain ways will slip.

For the reasons stated, we are of opinion that the limitations in the claims to continuously cast and unscalped articles can be given no material weight in determining the question of patentability of the appealed claims.

Each of the appealed claims is also limited to a casting having a crystal structure consisting largely of transverse crystals that are substantially perpendicular to the longitudinal axis of the article. The crystal structure called for by the appealed claims is old in small conventional vertical castings, as disclosed in the Brearley reference, and it is, therefore, clear that patentable novelty cannot be predicated on that feature.

In addition to the limitations hereinbefore considered, each of the claims contains a statement to the effect that the article has a "practically perfect" smooth surface which is free from cracks and fissures so that the article may be rolled or drawn without scalping. Such statements involve merely a difference in degree from prior art products. The desirability of having a smooth surface is, of course, generally recognized in the art, and it is for that purpose that scalping is employed. Accordingly, while there may be invention in a method or means by which a smoother article can be produced, an article per se is not patentable merely because it is superior in this respect to prior art products. As we said in In re Cooke, 117 F.2d 749, 752, 28 C.C.P.A. (Patents) 910:

It is our view that merely because appellant has succeeded in producing an article that is more perfect than any similar article shown in the cited prior art, it does not necessarily entitle him to a patent on the article. It may be that invention rests in certain novel features of the article, as is emphasized by some of the allowed claims, and it may also be that invention rests in the method of an apparatus for making the article, but surely it cannot rest alone in the degree of accuracy or perfection obtained by the employment of the method and apparatus.

See also In re Merz, 97 F.2d 599, 25 C.C.P.A. (Patents) 1314.

Certain of the claims also state that the article has a substantially constant density in a longitudinal direction. That limitation is also a matter of degree only and represents, at best, merely an improvement over the ordinary cast ingot in a characteristic known to be desirable. It follows that this limitation, like that as to smoothness, cannot impart patentability to the claims. In re Cooke, supra, and In re Merz, supra.

Claim 48 specifies that the variation in density is not more than about 0.07, but it is not shown that that limitation as

to density is in any way critical. That claim, like the others, involves merely a matter of degree, so far as density is concerned.

Some of the claims, as in quoted claim 48, refer to the properties of the ingot in the condition "as cast." It is considered immaterial if an article has any given property, whether it had this property "as cast" or acquired it later by a machine process.

Claim 48 states that the article has "a thin skin of copper crystals in a matrix of copper-copper oxide eutectic covering the exterior thereof." The examiner held that that characteristic would be satisfied in a casting made in a stationary mold, if a copper composition containing oxygen were used. Appellants submitted no evidence to rebut that holding of the examiner. Accordingly, the quoted limitation in claim 48 cannot be held to lend patentability to that claim.

Although appellants place great emphasis in their brief on the alleged superiority of ingots made by the process and apparatus of their patents over ingots of the prior art, we are of opinion, for the reasons hereinbefore stated, that the appealed claims do not define patentable subject matter.

The decision of the Board of Appeals is, accordingly, affirmed.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.