## PLUMMER *v.* SARGENT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

Argued January 10, 11, 1887. — Decided March 7, 1887.

The reissued letters-patent No. 2355, dated September 11, 1866, granted to the Tucker Manufacturing Company as assignee of Hiram Tucker, for

an improved process of bronzing or coloring iron, and No. 2356, of like date and grantee for the product resulting from that process, are in fact for but one invention, and the new article of manufacture called Tucker bronze is a product which results from the use of the process described in the patent, and not one which may be produced in any other way: and they are not infringed by the manufacture, by the defendants, by the different process used by them, of an article which cannot be distinguished, by mere inspection, from Tucker bronze.

THIS was a bill in equity to restrain the infringement of letters-patent. Decree that the bill be dismissed, from which the complainant appealed. The case is stated in the opinion of the court.

*Mr. Elihu G. Loomis* and *Mr. James E. Maynadier* for appellant.

*Mr. John K. Beach* and *Mr. Charles E. Mitchell* for appellees. *Mr. John S. Beach* was with them on the brief.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a bill in equity to restrain the alleged infringement of reissued letters-patent Nos. 2355 and 2356, dated September 11, 1866, granted to the Tucker Manufacturing Company, as assignee of Hiram Tucker, and owned by the complainant; the former being for an improved process of bronzing or coloring iron, the latter for the product resulting from that process.

The specifications in the reissued patent No. 2355 are as follows:

"Metals have heretofore been lacquered or bronzed by the application of a solution of resin and metallic powders or salts, and dried by exposure to air or heat. Iron has been japanned by covering its surface with oily solutions of asphaltum and pigments and subsequent application of heat sufficient to produce hardness. These are well known operations.

"My invention consists in a process of covering iron with a very thin coating of oil, and then subjecting it to heat, the effect of which is to leave upon the iron a firm film, which is very durable, and gives the iron a highly ornamental appearance, like that of bronze.

"In practice I proceed as follows: The surface of the iron

is cleansed from sand, scale, or other foreign matter, and where fine effects are desired the surface is best made smooth or polished. Under given conditions of heating and oiling the finer the polish, the lighter is the bronze tint produced. In cases where ornamentation is obtained by relief the salient parts should be the most highly polished or most smoothly surfaced in order that the color produced upon them shall not be so deep as it is on those parts which are in the rear, so as to imitate thereby more nearly the effects of genuine bronze, in which its natural oxidation is apt to be worn somewhat away from its salient parts, and therefore lighter in color.

" When the iron is thus prepared, I cover it with a very thin coating of linseed oil, or any oil which is the equivalent therefor, for the purpose here specified (such a coating as I find best attained by applying the oil with a brush, and then rubbing off the oiled surface thoroughly with a rag, sponge, or other suitable implement), and then place it in an oven, where it is submitted to a degree of heat which may be measured by an intensity sufficient to change a brightened surface of clean, unoiled iron to a color varying from a light straw color to a deep blue, the lowest degree of heat producing the lightest colored changes and the lightest bronze, and the highest degree of heat producing the darkest colored changes and the darkest bronze. It is important that the coating of oil be made extremely thin, as a coating of any material thickness will leave a rough or varied surface after the heat is applied. As the oiled iron becomes heated the color obtained will be bronze, of an intensity corresponding to the degree of heat employed; but it should be observed that the heat may be made so intense and so long continued as to destroy the oil, in which case the iron will lose the bronze tint acquired and will assume the dark blue shade.

" The perfection of the results obtained under these instructions will of course depend, in a considerable degree, upon the dexterity and watchfulness of the operator in applying the oil and in regulating the heat.

" In practice I prefer to use boiled linseed oil. When the desired shade of bronzing is obtained, the iron is removed from

the oven or furnace, and, if desired, may again be treated with oil as before, even if not cool, and then again submitted to the action of heat, as described, and the operation of oiling and heating may be repeated indefinitely, each repetition deepening the shade of the bronzing. I recommend that at each repetition the degree of heat should be less than the degree immediately before employed; and in oiling and heating more than once I recommend for the second and succeeding oilings the use of a dry hog-hair brush to take off the surplus oil. The process may be carried to such an extent by repetition of oiling and heating as to produce a very dark color; black even may be thus produced.

"I have specially described linseed oil as preferred by me for the practice of my invention because of its good drying quality and its capacity of giving a good, uniform, smooth film when spread thinly upon the iron, as before described.

"Slight variations from the degree of heat above mentioned may be allowed without departing from the principle of my invention.

"What I claim and desire to secure by letters-patent is the process of ornamenting iron in imitation of bronze by the application of oil and heat, substantially as described."

Reissued patent No. 2356 is for a new article of manufacture, but the description of the method is the same as that contained in the specifications in the patent for the process; the claim, however, being as follows: "What I claim and desire to secure by letters-patent is the new manufacture hereinabove described, consisting of iron ornamented in imitation of bronze by the application of oil and heat, substantially as described."

These two reissues were based upon the surrender of a prior original patent, dated December 15, 1863, covering both claims. These reissued patents were the subject of litigation before Mr. Justice Clifford in *Tucker* v. *The Tucker Manufacturing Company*, 4 Clifford, 397, and before Judge Lowell in *Tucker* v. *Burditt*, 5 Fed. Rep. 808, and *Tucker* v. *Dana*, 7 Fed. Rep. 213. The decree below was in favor of the defendants on the ground that there was no infringement. *Tucker* v. *Sargent & Co.*, 19 Blatchford, 538. The infringement alleged

was in the manufacture and sale of cast-iron butts, samples of which were produced and marked as exhibits. These are described in the opinion of the Circuit Court; from whose decree this appeal is prosecuted, as follows:

"These butts are colored in this way: The sunken parts are first covered with a black japan, and this coat of blacking is baked in an oven at a temperature not exceeding 320 degrees Fahrenheit. This japanning of the sunken parts is immaterial. It is not really claimed to be a Tucker bronzing. The object probably is to make a marked contrast between the sunken and salient parts of the butt. All but the sunken parts are then ground and subjected to a heat of 480 degrees Fahrenheit, which colors the iron a dark straw color. The ground parts of one of the exhibits are nearly or quite blue. A coat of copal varnish of substantial thickness is then put on and baked in a heat of not over 300 degrees Fahrenheit. This produces a material coating of oxidized varnish upon the surface of the iron, which can be scraped up by a rapidly drawn knife-blade as a shaving rolls up before the knife of a plane. It was not claimed by the defendant that the varnish was not oxidized by the heat. No proof was offered by the plaintiff in regard to the oxidation of the iron during the second heating, and I do not think it of importance. The plaintiff relies upon the uncontradicted fact that by successive applications of heat the iron and varnish were oxidized, and if an iron surface oxidized by heat with a coating of varnish oxidized by heat necessarily make Tucker bronze, then the defendant infringes the plaintiff's patents."

In order to determine the question of infringement it is necessary to consider the state of the art at the date of the patent. It appears from the evidence that one F. W. Brocksieper, in the employ of certain firms and companies, the predecessors of the defendant, between 1849 and 1859, as a foreman in the ornamental department of their work, in the year 1857, introduced into the business a mode of treating hat-hooks, coat-hooks, jamb-hooks, sash-fasteners, match-boxes, looking-glass frames, and cast-iron horses for saddlers' windows, in the following way:

" We had the castings cast with a facing, so as to come out of the sand very nearly entirely free of sand, then those castings rolled, drilled and countersunk, the highest parts or the prominent parts of the ornaments brightened with sand-paper or emery-paper, brushed clean from dust, then sized and baked. In order to handle them easy, those hooks, we had them fastened on a block with a spring and sized them in quantities as they were ordered, let them stand long enough so that the size would not stick to the fingers, then we put them in pans, or on hooks, and put them in the kiln to bake. The size was a mixture of equal parts of turpentine, copal varnish, and linseed oil, and was applied in a very thin coat, put on with a stiff, fine brush as lightly as he could. The kiln was heated to 420 degrees Fahrenheit. Several batches of hooks of from twelve dozen to twenty-four dozen each, between one hundred dozen and two hundred dozen sash-fasteners, about one hundred looking-glass frames, and horses in 'considerable quantities,' were made and sold. The match-boxes were probably made in larger quantities."

It was contended by the plaintiff that this process was not the same as that covered by his patents, for two reasons: 1st, because, as he claimed, the iron was not oxidized by the heat; and, 2d, because the coating of size was too thick to make genuine Tucker bronze. The Circuit Court, in its opinion in this case, agreed upon this point with the plaintiff, that the process and article produced were different from those covered by the plaintiff's patents, on the ground that the coating of baked size over the iron was too thick, although it held that Brocksieper's method must have resulted in oxidizing the iron. The inference was that bright cast iron oxidized and covered with a coat of oxidized oil, varnish, or size might be, but was not necessarily, Tucker bronze. The latter product and process were defined by that court in its opinion as follows:

" Tucker bronze is a new surface of the iron produced by the joint oxidation or by the successive oxidations of the iron and a film of oil or varnish thereon, by means of high heat, and is not a new coating of oxidized oil or varnish upon the iron. The oil must be applied in such a way that after oxidation there is no

substantial-covering of baked oil upon the surface of the iron. The surface of the iron is a bronzed surface, because the film of the oil is so thin and is so closely united with the pores of the iron as to be almost a part of it, and does not form a substantial covering like a coat of varnish over the surface of the iron.

"In Tucker bronze'.which has been subjected to one heat, the film of oil can with difficulty be scraped off with a knife. When the iron has had two or three successive applications of oil, and has been heated two or three times, the oil comes off by scraping in the form of little flakes or of powder.

"Tucker's discovery was, that bright cast iron, covered with a thin film of oil, would take on, by the action of high heat, a new surface resembling bronze."

It was found from the evidence that the defendant covered the oxidized surface of iron with an oxidized coat of varnish, doing no more than what Brocksieper did in 1857, except that he did it in two successive stages instead of one, and for that reason there was no infringement. Although there are two patents, one for a process and the other for a product, there is in fact but one invention; and it may be assumed that the new article of manufacture called Tucker bronze is a product which results from the use of the process described in the patent, and not one which may be produced in any other way. So that, whatever likeness may appear between the product of the process described in the patent and the article made by the defendants, their identity is not established unless it is shown that they are made by the same process. The specimens exhibited in the case, as made by Brocksieper, have not the same external appearance as Tucker bronze; they are easily distinguished by inspection, and the process employed by Brocksieper seems to differ from that of the Tucker patents only in respect to the thickness of the sizing of oil or varnish applied upon the surface of the iron, unless the peculiarity of the Tucker bronze can be attributed to the fact that the thin film of oil or varnish was applied upon the surface of the iron before the application of the heat, and not after. For, although the patent contemplates and describes successive applications of heat, yet in each case it is to an oiled surface of iron. On

the other hand, the method employed by the defendants consists, first, in subjecting the cleansed surface of the iron to a heat of 480 degrees Fahrenheit, sufficient to change its color by oxidizing, and then applying a coat of copal varnish and heating again to a point not in excess of 300 degrees Fahrenheit, which, while sufficient to harden and color the varnish by what is called the process of oxidation, yet is not sufficient to oxidize the iron itself. It is difficult, if not impossible, to distinguish by the eye the result of this process from Tucker bronze made according to the patents, but the two processes differ in the particulars pointed out; the effect in Tucker bronze appearing to be produced by the joint oxidation of the iron and the oil, while in the defendant's product the result is attained by successive heatings, first of the iron, and then of the iron and oil, the heat, in the second step of the process, not being sufficient to cause a joint oxidation of the iron and the oil.

It seems necessarily to follow from this view either that the Tucker patents are void by reason of the anticipation practised by Brocksieper, or that the patented process and product must be restricted to exactly what is described, that is, to a simultaneous and joint oxidation of the iron and the oil after the application of the oil to a cleansed surface of cast iron. To that extent the patents may be sustained, but upon that construction they do not include the process and product of the defendants; there is consequently no infringement.

In opposition to this conclusion it is contended, on the part of the appellants, that the witnesses who testify to the methods employed by Brocksieper in 1857 have confounded in their memory the actual facts in regard to that method as then practised with processes subsequently employed, and which could have been learned only after the issue of the Tucker patent in 1863; and in corroboration of that criticism upon this evidence it is shown that reproductions of the Brocksieper method, made under the eye of the examiner by a competent expert, during the progress of the taking of the testimony, were not distinguishable in appearance from Tucker bronze made according to the patents. We are not, however,

able to adopt that view of the evidence. The fact that by careful workmanship the products are indistinguishable by mere inspection does not establish the identity of the processes, and as the patent for the product must be limited to an article made by the particular process, the inquiry must be determined by a comparison between the methods actually employed. As that used by the defendants differs from that described in the patent, just as that employed by Brocksieper does, the process of the defendants cannot be construed as an infringement without at the same time declaring that used by Brocksieper to be an anticipation.

The decree of the Circuit Court must, therefore, be

*Affirmed.*