**Application of John H. HUGHES.**
**Patent Appeal No. 9137.**

United States Court of Customs
and Patent Appeals.
June 6, 1974.

Harry M. Cross, Jr., Seattle, Wash. (Seed, Berry, Dowrey & Cross), Seattle, Wash., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. John W. Dewhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals af-

firming the rejection of claims 12 and 13 of appellant's application serial No. 817,219, filed March 7, 1969, for reissue of patent No. 3,315,717, issued April 25, 1967, entitled "Semi-Split Shake." [1] The rejection was made by the board on a new ground, pursuant to Patent Office Rule 196(b). We reverse.

## The Invention

The invention relates to the fabrication of shakes by first cutting blocks of cedar, for example, called shake bolts, to produce sawn shake tip portions and then splitting the shakes from the bolt by commencing the split at the inner ends of the cuts and allowing the shakes to split along natural cleavage lines, dictated by the grain of the shake bolt wood, to produce split weather end portions. The application contains allowed claims directed to the method of making the shakes and also article claims to the shake. The two rejected claims are delineated product-by-process claims and are as follows:

12. Shakes manufactured from a shake bolt by the process of making a plurality of cuts into and across the shake bolt to an extent to establish predetermined tip lengths, and splitting the weather end portions of the shakes from the bolt by starting the splits at the inner ends of the cuts and continuing the splits to the end of the bolt.

13. Shakes defined by claim 12 wherein each such shake comprises a tip end portion having cut top and bottom surfaces, and a weather end portion having top and bottom surfaces formed by natural cleavage commencing at the juncture of the tip end and weather end portions.

## The Rejection

The basis of the board's new ground of rejection of these claims is that they are "improper product-by-process claims" because "it is only proper to use product-by-process claims when there is no other way of claiming the structure and * * * [,] since the appellant presents article claims 8 through 10, it is obvious that the product can be claimed without process limitations."

Although this was formally a new ground of *rejection* by the board, the examiner had commented on the impropriety of the product-by-process claims and appellant had responded by citing two cases decided by this court, In re Pilkington, 56 CCPA 1237, 411 F.2d 1345, 162 USPQ 145 (1969), and In re Steppan, 55 CCPA 791, 394 F.2d 1013, 156 USPQ 143 (1967). In response to appellant's argument, the board stated:

The appellant asserts that the Court in *In re* Pilkington, *supra*, laid to rest the question of whether product-by-process claims are permitted in an application when the product can also be adequately claimed by its physical characteristics. However, the Court clearly did not do so explicitly, nor do we believe it did so implicitly since the Court found that the product-by-process claim involved satisfied 35 U. S.C. 112 since the differences between the applicant's article and the prior art article were not particularly susceptible to definition by conventional recitation of properties or structure. It appears that if the appellant's position were correct the Court would simply have found that the form of the claim was immaterial. Moreover, the Court of Customs and Patent Appeals stated in In re Johnson, 55 CCPA 1463, 394 F.2d 591, 857 OG 670, 157 USPQ 620, "This court has repeatedly held that a claim for an article capable of such definition must define the article by its structure and not by the process of making it."

## Appellant's Argument

Appellant's argument before us is twofold: He first challenges the basis for the rejection, the validity of the rule that one cannot have product-by-process claims because he can describe his inven-

[1]. A "shake," in the context of this case, is a shingle *split* from a short log of straight-grained wood.

tion by true product claims. He asserts that the rejection is without foundation in the statute and actually prevents an applicant from claiming with precision and definiteness that which he "regards as his invention," according to 35 U.S.C. § 112, second paragraph. Appellant's second argument is that even if the rule against the use of product-by-process claims as stated by the board is sound, it is not applicable here because the allowed product claims in this application are not true product claims but are actually product-by-process claims. Appellant notes particularly the emphasized language in allowed claim 8, which reads:

8. A semi-split shake comprising a tip end portion having cut top and bottom surfaces, and a weather end portion having top and bottom surfaces *formed by natural cleavage commenced at the juncture of the tip end and weather end portions.*

This is the only example of the allowed product claims in the record before us, and the solicitor has not sought to add to the record any of the other product claims or controverted the statement in appellant's brief that "the allowed product claims * * * define the product as having a weather end portion 'formed by natural cleavage commenced at the juncture of the tip end and weather end portions.' "

### OPINION

As the solicitor notes, the rule applied by the board dates back to at least 1891, when, in Ex parte Painter, 1891 C.D. 200, 57 O.G. 999,

* * * the Commissioner of Patents enunciated the general rule that a product should not be defined in terms of the process of making it. In *Painter,* a proper exception to the general rule was found on the ground that the product could not be properly defined and discriminated from the prior art otherwise than by reference to the process of producing it. This basic

rule and the exception have been recognized and followed continuously by the Patent Office and the Courts. * * * *In re Johnson* * * *.

■ The solicitor also correctly notes that in spite of the fact that a product-by-process claim may recite only *process* limitations, "it is a *product* which is covered by the claim and *not* the recited process steps." He further asserts that the definiteness requirement of the second paragraph of § 112 is the basis for the rule and "that the underlying reason for the often expressed impropriety of product-by-process claims lies in the fact that their scope is undeniably more difficult to determine than the scope of product claims which are drawn in terms of structure or physical characteristics."

We cannot agree with the solicitor that defining a product in terms of process makes the language of the claims imprecise or indefinite. Their scope, if anything, is more definite in reciting a novel product made by a specific process, assuming, of course, that the process is clearly defined. It does not create a definiteness problem under § 112.

If there is a basis for the rule applied by the board, it resides in the fact that it may be more difficult to determine from a product-by-process claim what product is covered thereby. One cannot read the words of the claim on an article unless he is able to find out how the article was made. Therefore, there may be a sound policy reason behind the rule, as a general proposition, requiring articles to be defined without reference to process. It is a rule of public convenience and we have, therefore, often approved its application. *In re Johnson,* supra.

■■ However, the general rule has its recognized exceptions. *In re Pilkington,* supra. We agree with appellant that the rule should not be applied to the situation before us. We have been shown no true product claim which de-

scribes appellant's invention, in the words of the solicitor, "in terms of structure or physical characteristics." When an applicant seeks to describe his invention by a product-by-process claim because he finds that his invention is incapable of description solely by structure of physical characteristics, it is incumbent upon the Patent Office to indicate where, or how, the applicant's invention is, or may be, so described. The so-called product claims here, pointed to by the Patent Office, containing as they do the language noted by appellant, do not represent a description of appellant's invention solely in terms of structure or physical characteristics so as to be true product claims. While we recognize that several structural or characterizing terms derive from processes or methods and that their use in a claim will not prevent it from being considered to be a true product claim,[2] we do not believe that the emphasized language in claim 8 can be considered to be anything other than a description of the shake in terms of the process by which it was made. We note that the language of allowed claim 8 bears a remarkable similarity to that of rejected claim 13. As noted by appellant, "the product—product-by-process dichotomy is not as absolute and clear cut as the examiner and the board concluded."

Furthermore, even if it is shown that the product can be broadly defined solely in terms of structure and characteristics, appellant makes the point, with which we agree, that where his product is incapable of description by product claims which are of a *different* scope, he is entitled to product-by-process claims that recite his novel process of manufacture as a hedge against the possibility that his broader product claims might be invalidated.

Accordingly, the decision of the board rejecting claims 12 and 13 is reversed.

Reversed.

61 CCPA

---

2. For example, the term "cut" in appellant's claim 8.