**1.** On the first vote, conducted before release of the opinion, seven of this court's ten active judges refused to vote for rehearing. On the second vote, conducted after release, six refused the rehearing suggestion. The points raised by

**ATLANTIC THERMOPLASTICS CO., INC., James B. Sullivan and Richard B. Fox, Plaintiffs–Appellants,**

v.

**FAYTEX CORPORATION, Defendant/Cross–Appellant.**

**Nos. 91–1076, 91–1095.**

United States Court of Appeals, Federal Circuit.

Sept. 15, 1992.

Jack R. Pirozzolo, Willcox, Pirozzolo & McCarthy, Boston, Mass., argued for plaintiffs-appellants. With him on the brief was Richard L. Binder.

Anthony M. Lorusso, Lorusso & Loud, Boston, Mass., argued for defendant/cross-appellant. With him on the brief was Thomas M. Sanders. Of counsel were John F. Bomster, Alder, Pollock & Sheehan, Inc., Providence, R.I. and George A. Loud, of Arlington, Va.

RADER, Circuit Judge, concurring in the denial of rehearing in banc.

Twice a judge requested a poll on whether to reconsider *in banc* the ruling in *Atlantic Thermoplastics Co., Inc. v. Faytex Corp.*, 970 F.2d 834, 23 USPQ2d 1481 (Fed. Cir.1992). Twice a majority of the court refused to approve rehearing.[1] Twice the entire court considered detailed arguments in favor of reconsidering the court's decision. Twice the court declined to disturb the *Atlantic Thermoplastics* ruling.

Fed.Cir.R. 35 governs *in banc* rehearing: Such a hearing or rehearing is not favored and ordinarily will not be ordered except (1) when consideration by the full

this concurrence and by the several dissents were before the court when it declined to grant rehearing. Since these events, an eleventh active judge has joined the court.

court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceeding involves a question of exceptional importance.

The ruling in *Atlantic Thermoplastics* did not call into question the uniformity of this court's rulings. This court has uniformly declared that claim language identifies the invention and delimits patent protection. This court has uniformly stated that the infringement inquiry requires reference to the claims. Because *Atlantic Thermoplastics* followed these uniform rules, Fed. Cir.R. 35 did not compel rehearing.

## I.

In *Atlantic Thermoplastics,* the court reaffirmed, in the case of a product-by-process claim, that claim language defines the bounds of patent protection. The Supreme Court and this court have, without exception, followed this basic principle for all varieties of claims. *United Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228, 232, 63 S.Ct. 165, 167–68, 87 L.Ed. 232 (1942) ("The claims 'measure the invention.'"); *General Elec. Co. v. Wabash Appliance Corp.,* 304 U.S. 364, 369, 58 S.Ct. 899, 902, 82 L.Ed. 1402 (1938); *Continental Paper Bag Co. v. Eastern Paper Bag Co.,* 210 U.S. 405, 419, 28 S.Ct. 748, 751, 52 L.Ed. 1122 (1908); *White v. Dunbar,* 119 U.S. 47, 52, 7 S.Ct. 72, 75, 30 L.Ed. 303 (1886) ("The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms."); *In re Vamco Machine & Tool,* 752 F.2d 1564, 1577 n. 5 (Fed.Cir. 1985).

Atlantic Thermoplastics Co., Inc. (Atlantic), citing *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 18 USPQ2d 1001 (Fed.Cir.1991),[2] asked the court to enforce claim 24 of U.S.

Patent No. 4,674,204 (the '204 patent) without regard to its limitations. The court therefore had to decide whether Faytex infringed Atlantic's patent. The parties did not pose, and the record did not permit the court to resolve, issues about the validity of Atlantic's claims. In the absence of a challenge to validity, the court afforded Atlantic the statutory presumption of validity. *See* 35 U.S.C. § 282 (1988).

In determining infringement, the court recognized that if it ignored the process limitations of claim 24—a product-by-process claim—it would disregard the primary, if not the only, limitations in the claim. Neither a trial court nor an appellate court would have any way to determine the product for which Atlantic sought patent protection. Moreover, no court would have a legal basis to determine infringement.

The infringement inquiry compares properly construed claims with the accused product or process. *Perini Am., Inc. v. Paper Converting Mach. Co.,* 832 F.2d 581, 584–86, 4 USPQ2d 1621, 1624–25 (Fed. Cir.1987); *Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.,* 750 F.2d 1569, 1579, 224 USPQ 409, 415 (Fed.Cir.1984). Thus, a court has no authority to determine infringement without reference to the claims of a patent. A court may not, for instance, compare the accused product with a preferred embodiment described in the patent or with a commercial embodiment of the patented invention. *Loctite Corp. v. Ultraseal, Ltd.,* 781 F.2d 861, 867, 228 USPQ 90, 95 (Fed.Cir.1985); *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1121, 227 USPQ 577, 586 (Fed.Cir.1985). Similarly a court may not reach a conclusion about infringement by comparing the accused product with a chemical "fingerprint" not found in the claims. The claims alone define the patent right. *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 339, 81 S.Ct. 599, 601, 5

**2.** In *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 18 USPQ2d 1001 (Fed.Cir.1991), the appellant—Scripps Clinic—asked this court on appeal to construe its product-by-process claims in a case devoted primarily to its product claims. Genentech replied that

the district court had not certified the product-by-process issue for appeal. *Id.* at 1583. Genentech felt the issue was not before this court. Therefore, at no time on appeal did Genentech address the merits of Scripps Clinic's product-by-process claims.

L.Ed.2d 592 (1961); *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 702, 218 USPQ 965, 967 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984). In the context of Atlantic's product-by-process claims, no court had a way to determine, without strict adherence to the claims, what product claim 24 protected. Moreover, without strict adherence to the claims, no court had anything to compare with the accused product to measure infringement.

## II.

In *Atlantic Thermoplastics*, the court properly construed the claims, including consideration of prosecution history. Claim 24 clearly discloses the limits of Atlantic's legal rights: "The molded innersole produced by the method of claim 1." *Atlantic Thermoplastics*, 970 F.2d at 836, 23 USPQ2d at 1483. This claim language is not ambiguous. By the terms of its claim, Atlantic did not limit itself solely to a patent on a process.

Moreover, other tools of claim interpretation underscore the clear meaning of claim 24's language. For instance, the claim differentiation doctrine advises that Atlantic did not limit claim 24 to a process. Atlantic already had a claim to the process, namely claim 1. Claim 24 did not simply reclaim claim 1. As shown by its language and the claim differentiation doctrine, claim 24 claimed a product. Indeed, as the court in *Atlantic Thermoplastics* acknowledged, 970 F.2d at 845, 23 USPQ2d at 1490, product-by-process claims are product claims, not process claims. *In re Bridgeford*, 357 F.2d 679, 682, 149 USPQ 55, 58 (CCPA 1966).

The '204 patent's prosecution history does not contradict the court's reading of claim 24's plain terms. At one point in the '204 patent's prosecution history, Atlantic referred to a 1986 article in the *Journal of the Patent and Trademark Office Society:*

This article establishes that product-by-process claims are based on process limitations and are acceptable even though a device can be claimed by structural features. Such product-by-process claims are process claims with *patentable process limitations* and would not conflict with any divisional claims [Atlantic's claims to the innersole product] containing *patentable, structural,* and *compositional* limitations.

Joint Appendix at 3066 (emphasis in original). With this language, Atlantic addressed claim 24's compatibility with its product claims. Atlantic cited the 1986 article to persuade the examiner that the Court of Customs and Patent Appeals had overruled the doctrine of necessity. *See Atlantic Thermoplastics*, 970 F.2d at 844, 23 USPQ2d at 1489; *In re Hughes*, 496 F.2d 1216, 1219, 182 USPQ 106, 108 (CCPA 1974). By its reference to the 1986 article, Atlantic did not intend to, nor actually, limit itself to a process. As noted, such a limitation would have been inconsistent with the terms of claim 24 and the form of claim 24.

At another point in the '204 patent's prosecution history, Atlantic stated that it did not perceive process limits in its claim:

[A]pplicants should not be unnecessarily restricted to any particular molding method or any particular insert material in the practice of the invention, particularly due to the wholly unexpected and pioneering nature of the method and the resulting product.

Joint Appendix at 3060. Taken as a whole, the prosecution history of the '204 patent does not show that Atlantic intended to limit itself to a process. In any event, ambiguous prosecution history cannot trump unambiguous claim language. *Howe Mach. Co. v. National Needle Co.*, 134 U.S. 388, 394, 10 S.Ct. 570, 572, 33 L.Ed. 963 (1889); *Intervet Am. v. Kee–Vet Laboratories*, 887 F.2d 1050, 1054, 12 USPQ2d 1474, 1477 (Fed.Cir.1989).

In sum, the unambiguous language of the claim, the form of the claim, the claim differentiation doctrine, and even the prosecution history convinced the *Atlantic Thermoplastics* court that Atlantic sought and obtained protection for a product in claim 24. Therefore, the court had to read the claim to discern what product Atlantic

claimed and had to compare the claims with the accused product to determine infringement.[3]

The court in *Atlantic Thermoplastics* knew that Atlantic had filed a divisional application on the product. This application for a product patent on an innersole with a shock absorbent heel section ripened into U.S. Patent No. 4,910,886. Atlantic could not acquire product patent rights under claim 24 by merely adding new process limitations to an old product. *Atlantic Thermoplastics,* 970 F.2d at 840–842, 23 USPQ2d at 1486–87. Faytex, however, did not contest on appeal the validity of Atlantic's '204 patent, but argued that it did not infringe. Because the properly construed claims showed conclusively the absence of any infringement, the *Atlantic Thermoplastics* court had no reason or license to inquire into the validity of Atlantic's product patent on an appellate record which did not concern U.S. Pat. No. 4,910,886.

### III.

The court in *Atlantic Thermoplastics* also correctly construed Supreme Court and other legal precedents applicable to Atlantic's claim 24. In enunciating its rule for enforcing claims to a product described solely in terms of the process for its making, the Supreme Court did not say that the process would only be a limit when the product is old. Rather the Supreme Court stated repeatedly: "nothing can be held to infringe the patent which is not made by that process." *Cochrane v. Badische Anilin & Soda Fabrik,* 111 U.S. 293, 310, 4 S.Ct. 455, 464, 28 L.Ed. 433 (1884) (BASF); *General Elec.,* 304 U.S. at 373–74, 58 S.Ct.

at 903–04. The Supreme Court enunciated that rule because otherwise the claims would "give no information as to how [the product] is to be identified." *BASF,* 111 U.S. at 310, 4 S.Ct. at 464.[4]

In *Plummer v. Sargent,* 120 U.S. 442, 7 S.Ct. 640, 30 L.Ed. 737 (1887), the Supreme Court applied this rule to a "new article of manufacture called Tucker bronze." *Id.* at 448, 7 S.Ct. at 643. The court in *Atlantic Thermoplastics* identified several rulings from U.S. Courts of Appeals applying the Supreme Court's rule. *Atlantic Thermoplastics,* 970 F.2d at 841–843, 23 USPQ2d at 1487–88.

Finally, the Court of Customs and Patent Appeals, though lacking jurisdiction over infringement suits, repeatedly acknowledged the Supreme Court rule—without perceiving a restriction to only old products. *Bridgeford,* 357 F.2d at 682 n. 5; *In re Hirao,* 535 F.2d 67, 69 n. 3, 190 USPQ 15, 17 n. 3 (CCPA 1976); *In re Moeller,* 117 F.2d 565, 568, 48 USPQ 542, 545 (CCPA 1941). Indeed, as noted in *Atlantic Thermoplastics,* 970 F.2d at 845, 23 USPQ2d at 1490, the Patent Court treated the process as a limitation in product-by-process claims. For instance, Judge Rich, writing for that court in *In re Hughes,* clarified that the process defines and limits the scope of a product-by-process claim. *Hughes,* 496 F.2d at 1218–19. The same case distinguished the scope of "true" product claims from the scope of product-by-process claims—an acknowledgement that the process limited the latter. *Id.* at 1219. Similarly, this court acknowledged that the process limits product-by-process claims.

---

**3.** The *Atlantic Thermoplastics* court tried to distinguish Atlantic's claims from those in *Scripps Clinic,* but could not. Scripps Clinic's claim 14 mirrored the form of Atlantic's claim: "Highly purified and concentrated human or porcine VIII:C prepared in accordance with the method of claim 6." The prosecution history and specification of Scripps Clinic's patent discussed little more than the process. U.S.Pat.Re. 32,011, Col. 1. 11. 17–23; Col. 2 11. 54—end. If these unambiguous and ubiquitous references did not limit Scripps Clinic's claim 14 to its process, the *Atlantic Thermoplastics* court could not read a single ambiguous reference in Atlantic's prosecution history to limit claim 24. Because

the '204 patent contained a product-by-process claim, this court therefore had to consult Supreme Court law to discern the proper infringement rule.

**4.** As the Supreme Court correctly noted, a court cannot simply infer what product a process might produce. Some processes—like a chemical purification process—might yield a different product each time performed. Each time performed, the process might yield a product with differences in chemical structure, differences in concentrations of components, differences in purity, in sum, different products.

*In re Thorpe,* 777 F.2d 695, 697, 227 USPQ 964, 966 (Fed.Cir.1985).

In sum, the court in *Atlantic Thermoplastics* properly construed and applied the law governing products claimed solely in terms of their manufacturing process.

## IV.

Any attempt to limit the Supreme Court's rule to cases involving old products fails for another reason. In giving meaning to claim language, the Supreme Court set forth a rule for construing product-by-process claims during the infringement inquiry under 35 U.S.C. § 271. In its infringement rule, the Court did not presume to address patentability concerns like those in 35 U.S.C. §§ 102, 103. Attempting to limit the Supreme Court's rule to old products imports entirely distinct patentability concerns into an infringement rule.

The court in *Atlantic Thermoplastics* followed a rule governing infringement for claims in the product-by-process form. As used traditionally and by the court in *Atlantic Thermoplastics,* the designation "product-by-process" describes the form of a claim, not a conclusion about validity, let alone patentability. No court has designated some product-by-process claims as "true" based on their oldness or obviousness. Such an old or obvious claim would be simply invalid. Moreover, labelling a claim as a "true" product-by-process claim still does not clarify how a court would identify, let alone perform an infringement analysis for, a product if the Patent Act somehow ignored the claim's sole or primary limitations.

## V.

Abiding by the claim limitations for product-by-process claims raises an important policy question: should courts, in construing the Patent Act, enforce the claim limitations when a patentee invents a product which defies description other than in terms of its fabrication process? In the

first place, if the Patent Act does not adequately protect such an inventor, then the proper recourse is to Congress. This court must not presume to stretch the terms of the Patent Act to encompass every desirable policy. This court does not enforce policies, but the words of law enacted by Congress.

In this instance, however, the Patent Act may well accommodate this policy concern. Under the terms of the Patent Act, if inventors claim a product in unduly narrow terms, they may later seek reissuance of the claims in broader terms. 35 U.S.C. § 251 (1988). This provision may offer inventors an opportunity to discern the structure of their product originally claimed primarily in process terms and seek broader protection to the extent supported by their original specification.

In fact, Scripps Clinic, the appellant in *Scripps Clinic,* recognizing the process limits on its product-by-process claim,[5] followed precisely this course. Scripps Clinic sought and obtained reissuance of its patent. In any event, the Patent Act does not leave an inventor who cannot claim a product other than in process terms without recourse.

Far more disconcerting policy questions would arise in the absence of the rule recognized in *Atlantic Thermoplastics.* If courts did not enforce the only limitations in product-by-process claims, then every patent applicant would have an incentive to claim in process, rather than structural, terms because product-by-process claims would have few, if any, limitations.

## VI.

This court declined to rehear *Atlantic Thermoplastics in banc* for good reason. The *Atlantic Thermoplastics* court correctly read binding Supreme Court precedents on adhering to claim language, on product-by-process interpretation, and on infringement procedure. In sum, the court

---

**5.** Scripps Clinic sought to reissue because, in the words of its counsel in prosecution history, its product-by-process claims encompassed "less than the inventors were entitled to claim." This history indicates Scripps Clinic's awareness of the process limits in its product-by-process claim.

in *Atlantic Thermoplastics* applied the Act's uniform rules uniformly. Therefore, Fed.Cir.R. 35 did not compel *in banc* reconsideration to maintain uniformity.