**TROPIX, INC., Plaintiff,**

v.

**LUMIGEN, INC., Defendant.**

**Civ. A. No. 92–11000.**

United States District Court,
D. Massachusetts.

May 28, 1993.

Thomas C. O'Konski, Steven J. Frank, Michael E. Attaya, Cesari and McKenna, Boston, MA, Steven B. Kelber, Charles L. Gholz, Oblon, Spivak, McClelland, Maier & Neustadt, P.D., Arlington, VA, for Tropix, Inc.

William F. Lee, Mark G. Matuschak, Hale & Dorr, Boston, MA, Mark Boland, J. Frank Osha, Sughrue, Mion, Zinn, Macpeak & Seas, Washington, DC, for Lumigen, Inc.

MEMORANDUM OF CONTROLLING
LAW

SKINNER, Senior District Judge.

In this action the plaintiff seeks damages and injunctive relief for the alleged infringement of its U.S. Patent No. 4,931,569 (the " '569 patent"). This patent is stipulated to be a "product-by-process" patent covering a process for producing purified chemiluminescent, water-soluble 1,2–dioxetane derivatives. The defendant manufactures purified chemiluminescent, water-soluble 1,2–dioxetane derivatives by a different process. The plaintiff claims that its product-by-process patent covers the product, no matter how produced, relying on *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed.Cir.),

*reh'g en banc denied* (Fed.Cir. May 14, 1991) (hereinafter *"Scripps"*).[1] The defendant relies on a subsequent Federal Circuit .case, *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834 (Fed.Cir.), *reh'g en banc denied,* 974 F.2d 1299 (concurring opinion); 974 F.2d 1279 (dissenting opinions) (Fed.Cir. 1992) (hereinafter referred to as *"Atlantic"*), for the proposition that a product-by-process patent covers only the process, not the product.

The resolution of this dispute should turn upon a prediction of the precedential effect which the Federal Circuit would give to each of these cases. Unfortunately, the judges of the Federal Circuit Court are in open disagreement on the point, making such a prediction hazardous. Faced with this situation, I will apply the rule which appears to me to be most consonant with the main stream of existing authority and the purpose of the governing statute.

The inquiry begins with the early approval by the Supreme Court of the concept of a patentable process, as distinct from the product resulting from the process, where the product could not be defined or distinguished from then prior art except by reference to the process by which it was made. *Smith v. Goodyear Dental Vulcanite Co.,* 93 U.S. 486, 499, 23 L.Ed. 952 (1877). Shortly thereafter, the Court held that where the claims of the patent referred to a process and to a product produced by that process, the patent was limited to the process, and did not cover a substantially identical product made by a different process. *Merrill v. Yeomans,* 94 U.S. 568, 571, 24 L.Ed. 235 (1877); *Cochrane v. Badische Anilin & Soda Fabrik,* 111 U.S. 293, 306, 4 S.Ct. 455, 28 L.Ed. 433 (1884) (*"BASF"*).

In the course of time, however, product-by-process patents were issued even when the product could be otherwise identified and described, but the applicant chose to state its claims in terms of the process. There developed a line of cases arising on appeals from the denial of patents by the Patent Office

which held that the Patent Office could deny a product-by-process patent if the *product* existed in the prior art, even though the applicant had elected to describe it solely in terms of the process used to produce it. This line of cases is exemplified by *In re Thorpe,* 777 F.2d 695 (Fed.Cir.1985). In writing for the panel in that case, Judge Newman appeared to recognize a dichotomy between standards of patentability and the limitation on claims for the purpose of determining whether there has been infringement:

> The practice and governing law have developed in response to the need to enable an applicant to claim an otherwise patentable product that resists definition by other than the process by which it is made. For this reason, even though product-by-process claims are limited by and defined by the process, determination of patentability is based on the product itself.

*Id.* at 697 (citations omitted).

*Scripps* articulated what appears to be a departure from that position. *Scripps* was an appeal from summary judgment orders entered by a district judge in an action for the alleged infringement of a product-by-process patent. *Scripps,* 927 F.2d at 1568. One of these orders was based on a determination that the allegedly infringing product was made by a different process, and thus was non-infringing. *Id.* at 1580. The Federal Circuit Court reversed in an opinion again written by Judge Newman:

> In determining patentability we construe the product as not limited by the process stated in the claims. *Since claims must be construed the same way for validity and for infringement, the correct reading of product-by-process claims is that they are not limited to product prepared by the process set forth in the claims.* Thus these claims are subject to an infringement analysis similar to that described in Part V, *ante* [standard product infringement]. Infringement of the process claims may be considered at trial.

*Clinic & Research Found. v. Genentech, Inc.,* 1991 U.S.App.Lexis 8701 (Fed.Cir. Apr. 30, 1991).

---

**1.** The Federal Circuit granted reconsideration for the limited purpose of clarifying that a particular infringement issue was not appealed, and denied reconsideration in all other respects. *Scripps*

*Id.* at 1583–84 (emphasis supplied). The emphasized language states a general proposition which does not appear in the prior literature, and is in direct conflict with Judge Newman's opinion in *In re Zletz*, 893 F.2d 319, 321 (Fed.Cir.1989), in which the court held that the Board of Patent Appeals erred when it "applied the mode of interpretation that is used by courts in litigation, when interpreting the claims of issued patents in connection with determinations of infringement or validity. This is not the mode of claim interpretation that is applicable during prosecution of a pending application before the [Patent and Trademark Office]." (Citation omitted).

A year later, in *Atlantic*, another panel of the court held that a product-by-process patent was not infringed by a similar product made by another process. Judge Rader, writing for the panel, reviewed the history of product-by-process patents, and the many cases in which it was held that the claims were limited by the process. Judge Rader explained that claims should be given "their broadest reasonable meaning when determining patentability," but a different approach is appropriate actions for infringement. *Atlantic*, 970 F.2d at 846. "[I]gnoring the claim limits of a product-by-process would clash directly with the basic patent principles enunciated by the Supreme Court and this court." *Id.*

One month later, the chief judge of the Federal Circuit moved *sua sponte* for rehearing the latter case *en banc*. Rehearing was denied, however, four judges dissenting. *Atlantic*, 974 F.2d 1279. Chief Judge Nies dissented from the denial of the rehearing, but expressed no opinion on the merits. *Id.* at 1280. Judge Rich also dissented, on several grounds:

1. The broad statements in Judge Rader's opinion were unnecessary because the patentee had admitted that the claim in question was limited to the process.

2. Pharmaceutical manufacturers need the broad protection for product-by-process drugs given by *Scripps* because of the cost of producing a new drug.

3. *Atlantic* disregarded the informal rule of the Federal Circuit that a prior precedent should not be overruled except by an *en banc* court. (Judge Rich took comfort from what is apparently another informal rule of the circuit, that when there are conflicting precedents the earlier precedent controls.)

*Id.* at 1280–81. Judge Lourie dissented on substantially the same basis, and both Judge Rich and Judge Lourie joined in the extended dissenting opinion by Judge Newman, the author of *Scripps*. *Id.* at 1281.

Judge Newman expressed the sentiments noted above, but also provided an extensive review of the case law in the Federal Circuit and its predecessors. In her view, there are two forms of product-by-process claims.[2] In the first form, the product does not exist in the prior art, but " 'cannot be properly defined and discriminated from prior art otherwise than by reference to the process of producing it . . . .' " *Id.* at 1285 (quoting *In re Painter*, 1891 C.D. 200, 200–01; 57 O.G. 999 (Comm'r of Pats. 1891)). In a second form, the product exists in the prior art, and only the process is original. *Id.* at 1286–88. In the first form she holds that the claims are not limited by the process, because the inventor of an entirely new product (particularly a chemical compound that never before existed) is entitled to the benefit of a novel product even though it can not be defined or discriminated from the prior art except by reference to the process which made it. *Id.* at 1285. In the second form she agrees that the claims are limited by the process. In her opinion the *Atlantic* panel had no need to discuss *Scripps*, in which the claim was for an entirely new compound, because in *Atlantic* the claim was only for a new process applied to produce a product which existed in the prior art. *Id.* at 1288.

Judge Rader filed an opinion concurring with the denial of rehearing, in which he recapitulated his opinion in *Atlantic*. *Atlantic*, 974 F.2d 1299. The other six judges who voted to deny rehearing filed no opinions. One cannot say whether they voted to deny rehearing because they considered the broad statements in *Atlantic* to state the control-

---

**2.** Judge Newman mentions a third form, which does appear to be relevant.

ling law, or because they considered it harmless dictum, unnecessary to the decision in the case.

It would appear that all the judges would agree that if the purified chemiluminescent, water-soluble 1,2-dioxetane derivative which is the subject of the '569 patent is a substance which existed in the prior art, then the claims are limited by the process. Since the less pure form existed in the prior art, I would guess that this is the case. *Cf. BASF, supra.* This is a highly technical question of fact, however, and can not be determined on the present record.

If it should be determined as a matter of fact that the purified substance is a totally novel product, then the choice between *Scripps* and *Atlantic* becomes crucial. There is much to be said as a matter of policy for Judge Newman's distinction between a process which produces a totally new substance and a novel process applied to a product which exists in the prior art, particularly in the present age of rampant biotechnology. I do not find any authority for this proposition before *Scripps,* however. The cases establishing the proposition that the claims are limited to the process originate from the period where product-by-process patents were allowed when the product could not be defined or distinguished from the prior art except by reference to the process. Judge Newman's assertion that there must be symmetry between the position taken by the Patent Office and the position taken by the courts in determining infringement does not appear to be supported by any authority, given the different functions of each institution. Even if symmetry were desirable, it would seem that the practice of the Patent Office should conform to the substantive rule of the courts rather than the other way around. It would appear to me, even in the confused state of the record, that a majority of the judges of the Federal Circuit would rule that *Atlantic* states the controlling law, and I so rule in this case.